UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA S. COWANS,<br><br>                              Plaintiff,<br><br>   - against -<br><br>FORSTER & GARBUS, LLP, RONALD FORSTER, MARK GARBUS, and JOEL D. LEIDERMAN,<br><br>                              Defendants. | Case No. 14-cv-7740-KBF<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff Linda S. Cowans brings suit against Defendants Forster & Garbus, LLP ("F&G"), Joel D. Leiderman, Ronald Forster, and Mark Garbus for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and New York Judiciary Law (NYJL) § 487.  Defendants misrepresented the legal status of a debt, engaged in harassing behavior against an unrepresented litigant, and committed an unfair, abusive, and deceptive act when they obtained a judgment against Ms. Cowans even though she was current on her court-ordered settlement. Ms. Cowans seeks statutory damages, actual damages, treble damages, attorney's fees, costs, and any further relief this Court deems appropriate.

### A.   JURISDICTION AND VENUE

1.      The Court has federal question jurisdiction over the lawsuit under the FDCPA, 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claim because it is so related to the claims within the Court's original jurisdiction that it forms part of the same case or controversy under Article 3 of the U.S. Constitution

2. Venue in this district is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Bronx County, New York.

3. Plaintiff is an individual who resides in Bronx County, New York.

4. Defendant F&G is a law firm and a limited liability partnership with its principal office at 60 Motor Parkway, Commack, New York, 11725.

5. Individual defendants Forster and Garbus are attorneys and partners of F&G. They control and supervise F&G's debt collection activities.

6. Individual defendant Leiderman is an attorney employed by F&G.

### B. STATEMENT OF FACTS

7. Ms. Cowans, 42, is a single mother of three children. She teaches pre-kindergarten at Williamsbridge NAACP Early Childhood Education Center.

8. On information and belief, F&G is a debt collection law firm that represents original creditors and companies that purchase charged-off debts in bulk. F&G has filed over 30,000 collection lawsuits in 2013 alone in just the 68 courts available on the New York "e-courts" system, https://iapps.courts.state.ny.us/webcivil/ecourtsMain.

9. On May 10, 2012, F&G filed a lawsuit against Ms. Cowans on behalf of Citibank, N.A. ("Citibank") in order to collect an alleged debt of $1,908.13. *Citibank, N.A. v. Linda S. Cowans*, No. CV-009177-12/BX (Bronx County Civil Court).

10. On June 1, 2012 Ms. Cowans filed a *pro se* answer.

11. The case was set for a bench trial on June 21, 2012. Ms. Cowans took time off from work and attended the hearing. Because F&G did not have a witness or admissible evidence in support of its claim, it obtained an adjournment of the trial date to September 13, 2012.

12. Ms. Cowans again took off from work to attend the September 13, 2012 trial date. Yet again F&G did not have a witness or admissible evidence in support of its claim – a full four months after filing suit -- and obtained yet another adjournment of trial to December 19, 2012.

13. F&G then filed a motion for summary judgment with a return date of November 28, 2012—two weeks before the third trial date.

14. Ms. Cowans never received this motion for summary judgment, even though she has never had problems with her mail and checks it regularly.

15. Upon information and belief, F&G did not serve a copy of the motion or notice of hearing on Ms. Cowans; however, F&G did file an affirmation of service falsely stating under oath that it mailed her a copy of the motion and notice of hearing.

16. Based on its false affirmation of service, F&G obtained summary judgment on default on November 28, 2012.

17. Ms. Cowans attended the third trial date on December 19, 2012. At this hearing, she learned that F&G had filed a motion for summary judgment, and that the motion had been granted on default.

18. On December 24, 2012, after meeting with a volunteer attorney at a courthouse clinic called the Civil Legal Advice and Resource Office ("CLARO"), Ms. Cowans filed a *pro se* order to show cause seeking to vacate the default summary judgment order and prevent entry of judgment. In her supporting affidavit, Ms. Cowans swore that she was never served with the motion for summary judgment.

19. The civil court issued the order to show cause setting a hearing on January 11, 2013 to decide whether to vacate the default summary judgment order.

20. At the January 11, 2013 hearing, Ms. Cowans felt pressured into settling because she knew that F&G had previously obtained summary judgment after failing to serve her with the motion. Accordingly, she agreed to a payment plan under which she would pay $25 per month "on or by" the 20th of each month, for a total of $1,200. The first payment was due March 20, 2013.

21. At the time (and still to this day), Ms. Cowans has been caring for her sick aunt. Her aunt is 88 years old and suffers from dementia and high blood pressure. She has a home health attendant from 9 a.m. to 7 p.m. Ms. Cowans is her closest relative and visits her daily, either before she arrives at work at 8 a.m. or after she leaves at 3:30 p.m. Ms. Cowans also handles her aunt's financial and personal matters. Recognizing that this situation, on top of caring for her children and working full time, is stressful and time-consuming, Ms. Cowans decided to send her payments to F&G in five-month increments.

22. On March 2, 2013, Ms. Cowans mailed F&G a check for $125 and included a cover letter explaining that the advance payment covered March, April, May, June, and July.

23. F&G deposited the check and credited her account for the full amount.

24. On July 10, 2013, Ms. Cowans mailed F&G a check for $125 and included a cover letter explaining that the advance payment covered August, September, October, November, and December.

25. F&G deposited the check and credited her account for the full amount.

26. However, despite Ms. Cowans's compliance with the stipulation—and F&G's acknowledgement of timely receipt of the payments—F&G moved to enter judgment against Ms. Cowans based on her alleged breach.

27. The application for default judgment is dated October 8, 2013, but the date on which it was filed with the court is unknown because the court's file-stamp is illegible.

28. F&G made false representations in its application for default on the stipulation.

29. Specifically, on behalf of F&G, Defendant Leiderman falsely affirmed under penalty of perjury: "That a settlement stipulation was entered into . . . . Defendant defaulted in making payments. Written notice of default was given on 9/25/2013 to Defendant[]."

30. The very face of Mr. Leiderman's verified application demonstrates its falsity. Specifically, under the January 11, 2013 stipulation, Ms. Cowans was to pay a total of $1,200 in "monthly payments of $25.00 due on or by the 20th day of every month commencing on the 20th day of March, 2013." Accordingly, as of October 8, 2013 (the purported date of signing of the default application), Ms. Cowans was required to have paid $175.00 (seven payments of $25.00). Yet the application correctly credits Ms. Cowans for her $250.00 in payments. On its face, therefore, she was ahead of her payment plan rather than in default.

31. Mr. Leiderman attached to the application for default judgment a notice of default dated September 25, 2013 and addressed to Ms. Cowans.

32. Under the terms of the settlement, before applying for a judgment, F&G was required to send Ms. Cowans notice of the alleged default and provide 10 days to cure it.

33. Ms. Cowans never received a notice of default.

34. Upon information and belief, F&G failed to send Ms. Cowans a notice of default, just as it had failed to send her its prior motion for summary judgment.

35. In addition, like the application for default judgment, the attached notice of default credits Ms. Cowans for her $250 in payments, listing the balance on the account as $950.

36.     Based on these false sworn statements, on November 4, 2013, the court clerk entered judgment against Ms. Cowans for $1,883.13.

37.     Ms. Cowans learned that F&G had applied for a default judgment when she received a letter dated October 10, 2013, which stated in relevant part: "A judgment has been sent to court for entry in the above matter.  If you wish to make some arrangement – and avoid a possible execution after entry of this judgment – contact this office.  Otherwise we will proceed accordingly."  Ms. Cowans was shocked and began to cry.  She immediately called F&G.  The F&G representative refused to speak with her unless she provided her social security number, which Ms. Cowans was not comfortable doing over the phone.

38.     The October 10, 2013 letter, sent on the F&G law firm letterhead, impliedly represented to Ms. Cowans that an attorney had done a meaningful review of the facts and circumstances of her account.

39.     Ms. Cowans called F&G a second time and provided her account number.  The representative told her that Ms. Cowans needed to speak with a "Ms. Cohen," who was not available.  Ms. Cowans left a message, identifying herself and explaining that she did not know why she received a letter from F&G because she was current on her payments.  Ms. Cohen never called her back.

40.     On November 7, 2013, Ms. Cowans called F&G a third time and finally spoke to Ms. Cohen.  Ms. Cowans said that she was current on her payments and did not understand why she had received a letter stating that a judgment had been sent to court for entry.  Ms. Cohen brusquely told Ms. Cowans that it was too late to do anything because F&G had already sent the application for judgment to the court.  Rather than review F&G's records to determine if Ms. Cowans was correct, and inquire into F&G's ability to voluntarily set aside the judgment, Ms.

Cohen told Ms. Cowans that the court would have to decide whether to put her back on the payment plan. Ms. Cowan was so scared after the call that she started crying. She then made a $25 payment to F&G, hoping to ameliorate the situation.

41. On December 24, 2013, after meeting with a volunteer attorney at CLARO, Ms. Cowans filed a *pro se* order to show cause seeking to vacate the fraudulently obtained judgment. Attached to her affidavit in support were proof of her payments and her cover letters to F&G specifying which months the advance payments covered.

42. At the January 15, 2014 hearing on the order to show cause, Ms. Cowans showed the attorney from F&G her proof of payments, but the attorney stated that it did not matter because the case was reopened and she would have to sign a new stipulation.

43. The second stipulation had the same $25.00 per month payment terms that would have been in effect had F&G not filed the false application for judgment on stipulation.

44. Ms. Cowans is again fully compliant with the terms of her stipulation of settlement.

45. Ms. Cowans is the prototypical vulnerable consumer the FDCPA was designed to protect, and has suffered damages inflicted by Defendants' conduct.

46. Ms. Cowans was already overwhelmed by caring for her aunt while raising her children and working full time, and Defendants' conduct hit her especially hard. When she received F&G's letter dated October 10, 2013 threatening to enter and execute on judgment, Ms. Cowans was scared and overwhelmed. She did not know what to do, and did not understand why F&G was taking these actions against her. After her children went to sleep, she laid in bed, worried and scared. She cried every night for the first two weeks, and then periodically until the judgment was vacated. She could not sleep the first two nights. She prayed every day and drank chamomile tea in order to calm down and sleep through the night. Her nervousness upset her

stomach and she lost her appetite. She does not understand the court system and wanted to hire a private attorney but did not know how she would afford one. She thought about withdrawing money from her 401(k) retirement fund but was not permitted to do so by her plan. She tried not to mention her problem to her coworkers, but they saw it on her face. In fact, shortly after she received the letter, her director asked her whether something was wrong. After Ms. Cowans explained what had happened, her director informed her that other employees were in similar situations and that their paychecks were being garnished. Ms. Cowans became terrified that F&G would take her whole paycheck and leave her without enough money to care for her children and pay her bills. She was so upset, she had to leave work early that day. The feelings of fear, anxiety, and helplessness continued for months, and even to this day. Although she is current in her payments, she is still afraid of what F&G might do next.

47. Ms. Cowans also lost time and incurred expenses in having to repeatedly go to court to fight F&G's repeated misrepresentations.

## COUNT 1
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

48. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

49. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because she was alleged to owe a debt.

50. The obligation alleged to be owed by Plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because it was allegedly incurred primarily for family, personal or household purposes.

51. Defendants are "debt collectors" as defined in 15 U.S.C. § 1692a(6) because they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be

owed or due another, using the instrumentalities of interstate commerce. Upon information and belief, Defendants regularly send debt collection letters to consumers and have filed hundreds of thousands of consumer credit lawsuits.

52. The actions of Defendants enumerated in the above Statement of Facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

53. Defendants materially violated the following sections of the FDCPA: 15 USC §§ 1692d, 1692e, and 1692f. By way of example and not limitation, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: engaging in conduct the natural consequence of which is to harass, oppress or abuse any person; using false, deceptive or misleading representations or means; misrepresenting the character, amount or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received by any debt collector for collection of a debt; the false representation or implication that any individual is an attorney or that any communication is from an attorney; the representation or implication that nonpayment of any debt will result in the seizure, garnishment, or attachment of any property or wages when such an act would not be lawful; threatening to take and actually taking an action prohibited by law; using false representations or deceptive means to collect or attempt to collect any debt; using unfair or unconscionable means; and the collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

54. The FDCPA was enacted to protect the least sophisticated consumer from abusive, deceptive, and unfair treatment by debt collectors. *See Clomon v. Jackson*, 988 F.2d 1314, 1318

(2nd Cir.1993) ("The basic purpose of the least-sophisticated consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."). Congress recognized that consumers more often than not lack the benefit of counsel and do not know their rights and are vulnerable to bullying tactics by more knowledgeable collectors.

55. Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as private attorneys general. *See* S. Rep. No. 382, 95th Cong., 1st Sess. ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others."). The filing of civil lawsuits not only makes consumers whole, it is the primary way in which debt collectors are incentivized to act lawfully, and honest debt collectors are not competitively disadvantaged.

56. In order to encourage private attorneys general to act, the FDCPA provides for mandatory shifting of attorney's fees.

57. Plaintiff is entitled to and seeks actual damages, statutory damages, and attorney's fees and costs.

## COUNT 2
## VIOLATIONS OF NEW YORK JUDICIARY LAW § 487

58. Plaintiff repeats and realleges each and every allegation contained in the above paragraphs as though set forth fully and at length herein.

59. NYJL § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or, "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

60. F&G and its employees qualify as "an attorney or counselor" under NYJL § 487.

61. Defendants violated NYJL § 487 by taking the acts listed in the statements of facts, including, but not limited to: filing a false certificate of service for the motion for summary judgment; seeking and obtaining an order on default based upon a summary judgment motion that was never served; applying for entry of judgment against Plaintiff when she was not in default of the operative settlement; misrepresenting to the court that Plaintiff had defaulted when she had not; including a notice of default in the default application that was never sent to Plaintiff; and refusing to withdraw the application or vacate the default judgment upon being placed on actual notice.

62. Plaintiff is entitled to and seeks actual damages, treble damages, and attorneys' fees and costs.

## JURY DEMAND

63. Plaintiff demands trial by jury.

## PRAYER

64. For these reasons, Plaintiff demands judgment against Defendants for the following:

    i. The above-referenced relief requested;

    ii. Actual damages;

    iii. Statutory damages of $1,000;

    iv. Treble damages;

    v.      Attorney's fees and expenses;

   vi.     Costs of court;

  vii.     Prejudgment and post-judgment interest as allowed by law;

 viii.     General relief;

   ix.     All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/

Carolyn E. Coffey (CC6741), and
Ariana Lindermayer (AL0625), of counsel to
Jeanette Zelhof, Esq.
MFY LEGAL SERVICES, INC.
Attorneys for Plaintiff
299 Broadway, 4th Floor
New York, NY 10007
Tel: (212) 417-3701
Tel: (212) 417-3742
Fax: (212) 417-3890
Email: ccoffey@mfy.org
Email: alindermayer@mfy.org

Ahmad Keshavarz (AK9602)
Attorney for Plaintiff
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com